Criminal Case Template







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



LEONARD EDWARD JOHNSON, AKA,
SAMANTHA LYNN JOHNSON,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-05-00012-CR

Appeal from the

380th District Court

of Collin County, Texas

(TC# 380-80972-04)




O P I N I O N

            This is an appeal from two jury convictions for the offenses of aggravated sexual assault
of a child and indecency with a child by contact. The court assessed punishment at life
imprisonment on the first offense and fifteen years’ imprisonment on the second offense. We
affirm the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
            Appellant was indicted under the name of Leonard Edward Johnson although he was also
known as Samantha Lynn Johnson. The complainant testified that Appellant, known to her as
Samantha, took her into the bathroom of a church they were attending. Appellant tried to lift her
up on his shoulders. He removed her pantyhose, and licked his finger; then, he inserted it into
her vagina and anus. She was five years old at the time. She told her mother what had occurred;
the mother testified that she did not want to believe what her daughter said. Her mother thought
Appellant, who dressed as a woman, seemed like a nice person and a good neighbor who had
assisted them in the past.
            However, the complainant’s mother related an incident when she and Appellant were
standing around visiting, and the complainant tried to interrupt their conversation. Appellant told
the complainant to shut up and he reached out to the complainant and brought her face to her
groin area to keep the complainant quiet. On another occasion, the complainant tried to stop and
talk to Appellant at the apartment complex. Appellant told the complainant that her pant’s zipper
was down, and the complainant’s mother saw Appellant lick his lips and say, “Yummy.”
            The complainant kept repeating what had occurred, and after about a week, the
complainant’s mother consulted a neighbor, Karen Shannon. Shannon spoke to the girl who
stated that Appellant had ripped her pantyhose, put his finger in his mouth, and touched her
“private” in the church bathroom. Shannon called the police.
            Members of the Plano Police Department spoke to complainant’s mother on February 8,
2004. She told them that Appellant had spread the complainant’s legs apart and put her on his
shoulders with her private area facing towards Appellant’s mouth. As the investigation ensued, a
police detective asked a forensic interviewer from the Collin County Children’s Advocacy Center
to interview the complainant. During this interview, the complainant stated that while she was in
the church bathroom, a “lady” touched her “where she goes potty.” The complainant also
indicated that Appellant licked his finger, touched her vagina, licked it again, and then stuck it in
her bottom. Initially, the complainant indicated that she had been touched while her clothes were
on. Later in the interview, she explained that Appellant had pulled her pants down and touched
her without her clothes on. Due to the fact that only digital penetration had occurred, it was
decided that the complainant would not undergo a sexual assault exam. However, approximately
eight months later, a sexual assault nurse performed such an exam on the complainant due to
Appellant being HIV positive.
            The Appellant’s sole witness was Linette Reno who testified that she had taken Appellant
to the church on the day of the assault. She stated that she remembered seeing the complainant
leaving the church service to go to the bathroom by herself. She had returned when she saw
Appellant separately leave the service to go to the bathroom. She related that Appellant had a
homosexual lifestyle and she would not let her nephews or nieces alone with him because he had
the AIDS virus. She did not believe Appellant was capable of doing the act for which he was
accused.
II. DISCUSSION
            In Issue No. One, Appellant asserts that the court erred by violating Appellant’s right to
confrontation by limiting his cross-examination of the alleged victim regarding prior false
allegations of sexual assault. At the close of the complainant’s testimony, Appellant’s counsel
asked to reserve the witness. The court inquired why he wished to reserve the witness. A
hearing was held outside the presence of the jury, and counsel stated that he wished to question
the complainant about four instances where the complainant had made false accusations of
sexual misconduct to her mother which were recanted and one such instance involving a family
member which was made to various investigating authorities. Counsel stated that the first four
false claims put the complainant’s credibility at issue, and the last instance served as an
alternative explanation of how the child suffered sexual abuse as opposed to acts alleged against
Appellant. The court denied Appellant’s request. On appeal, Appellant contends that he was
denied his right to confrontation by not being allowed to impeach the complainant concerning the
mentioned five instances.
            The State contends that Appellant has failed to preserve these contentions on appeal. We
agree. The Court of Criminal Appeals has held, and the Rules of Evidence make clear, that to
preserve error in the exclusion of evidence, the proponent is required to make an offer of proof
and obtain a ruling. Tex.R.Evid. 103(a)(2); Williams v. State, 937 S.W.2d 479, 489
(Tex.Crim.App. 1996). Appellant did both, but his objection was not specific enough to put the
trial court on notice that he was making a Confrontation Clause argument; hence, the error is not
preserved.
            In Reyna v. State, 168 S.W.3d 173, 183 (Tex.Crim.App. 2005), Reyna was charged with
indecency with a child. Id. at 174. After the victim had testified on direct examination by the
State, Reyna sought to introduce evidence of the victim’s prior false allegation of sexual assault
and her recantation of that allegation. Id. at 174-75. Reyna sought to introduce the evidence, not
to prove the truth of the matter asserted, but rather to demonstrate she previously made a sexual
assault allegation that she recanted. Id. at 182. The Texas Court of Criminal Appeals held that
Reyna’s arguments about hearsay did not put the trial judge on notice that he was making a
Confrontation Clause argument. As Reyna “did not clearly articulate” that the Confrontation
Clause demanded admission of the evidence, the trial judge “never had the opportunity to rule
upon” this rationale. Id. at 179. Hence, the Texas Court of Criminal Appeals affirmed the trial
court’s judgment to exclude the victim’s prior false allegation of sexual assault.
            Similarly, this case involves a proffer of evidence, where Appellant did not argue that the
Confrontation Clause demanded admission of the evidence. Appellant argued instead that the
testimony regarding the four alleged instances of recantation was admissible to attack the
complainant’s credibility. Also, the fifth instance regarding the family member was offered to
provide an alternative to Appellant’s culpability. In all five instances, Appellant did not
reference the Confrontation Clause. Accordingly, he has waived his contentions on appeal. See
id. at 179. Issue No. One is overruled.
            In Issue No. Two, Appellant contends that the court abused its discretion by allowing
hearsay testimony from an outcry witness over Appellant’s hearsay objections.


 During the
testimony of the complainant’s mother, the following exchange took place concerning the
complainant’s outcry statement as they were leaving the church:
STATE:After Samantha spoke to you, what happened then?
 
WITNESS:She tried to, just tried to leave the place, and we were out at the
door. [Complainant] started saying Samantha touching her and
took her to the bathroom. She was with a girl, and grabbed her
from behind.
 
STATE:Where were you when [complainant] started telling you this?
 
WITNESS:We was at the door leaving.
 
STATE:Were you outside the church or inside the church?
 
WITNESS:I can show you probably we just beginning to open the door.
 
STATE:Just going outside?
 
WITNESS:Uh-huh.
 
STATE:Did [complainant] come up to you to say this?
 
WITNESS:No. We walking by to leave, we all--
 
STATE:And what did [complainant] tell you?
 
            WITNESS:     Well, she started talking about kind of confusing words, like run back and
forth and it doesn’t make sense; but Samantha, she’s like Samantha
grabbed her from behind and took her to the bathroom and tried to pull her
up, feeling her in the shoulders.
 
DEFENSE:Object to hearsay, Your Honor.
 
STATE:Your Honor, number one is a notice for outcry witnesses and in
addition based upon the defense cross-examination of
[complainant] regarding inconsistent statements. These could be
prior inconsistent statements as well.
 
DEFENSE:That is limited to just what the notice said, and they are beginning
to get to testimony beyond what was given in the notice, Your
Honor. The law is very clear on outcry statements. 
 
COURT:I’ll overrule. 
 
STATE:[Complainant’s mother], you said that [complainant] said that
Samantha tried to pull her up?
 
WITNESS:Yes. That is what I was saying, she said confusing thing, you
know, but the meaning is she tried to tell me Samantha grabbed
her. She was being with a girl talking and Samantha grabbed her
from the back and took her to the bathroom and tried to pull her up
in the shoulders.
 
STATE:On Samantha’s shoulders?
 
WITNESS:Pull her up and open her legs and sit her on her shoulders. At that
time Samantha tried to kiss her in her private part, and she put her
finger in her, pointing me her vagina and her rectum. 
 
STATE:Now, you said that she said Samantha tried to kiss her private
parts. Did she describe what Samantha was doing when she said
her face was near [complainant’s] private parts?
 
WITNESS:Yes. Her vagina.
 
STATE:What was Samantha doing at the time?
 
WITNESS:Tried to lift her up and open her legs to put her up on the shoulder.
 
STATE:She was describing how Samantha’s face was near her private part
when she’s lifting her up?
 
WITNESS:Yes, and kissing her there.
 
STATE:[Complainant] didn’t say whether her clothes were on or off at that
time?
 
WITNESS:No.

            The State provided notice of its intent to offer outcry evidence in several letters sent to
trial counsel. The first letter indicated that complainant’s mother and several other witnesses
would testify that the complainant stated that Appellant kissed her on her lips and on her privates
in the bathroom of the church. Further, she described how Appellant put her finger in her female
sexual organ and pointed to her female sexual organ in the place where she “goes potty.” Also,
she related that Appellant touched her anus. In another letter, it was related that the complainant
told her mother that Appellant took her into the bathroom at church and touched her female
sexual organ.
            Appellant maintains that the trial court should not have admitted the mother’s statements
of what the complainant said to her because the notice of the outcry statements did not indicate
that the complainant stated to her mother that Appellant tried to pull her up or that Appellant had
tried to kiss her privates. Furthermore, Appellant complains that the court failed to hold a
hearing to determine the reliability of the statements in accordance with the outcry statute.
            We note that the first notice letter did state that Appellant kissed the complainant on the
privates. Furthermore, there was testimony from one of the investigating police officers that the
complainant’s mother had told him that Appellant had put her daughter up on her shoulders. 
Also, the complainant testified that Appellant tried to put her up on her shoulders. No objection
was lodged to any of this testimony.
            Initially, we note that to preserve error on the ground that a witness improperly testified
as an outcry witness, the defendant must timely and specifically object and, unless allowed a
running objection, must continue to object each time the witness offers the improper outcry
testimony. See Tex.R.App. P. 33.1; Beckham v. State, 29 S.W.3d 148, 153-54 (Tex.App.--Houston [14th Dist.] 2000, pet. ref’d). In this instance, Appellant did not timely object before
the outcry testimony came before the jury and he did not renew his objection when the
complainant actually testified about being pulled up on Appellant’s shoulders.
            However, even if Appellant preserved error and the court erred in admitting the outcry
statement, we must determine if the admission of improper evidence prejudiced Appellant. 
Nonconstitutional error is not reversible if it does not affect an Appellant’s substantial rights.
Tex.R.App. P. 44.2. Substantial rights are affected when the error has a substantial and injurious
effect or influence in determining the jury’s verdict. King v. State, 953 S.W.2d 266, 271
(Tex.Crim.App. 1997). The admission of inadmissible hearsay constitutes nonconstitutional
error and will thus be considered harmless if, after examining the record as a whole, we are
reasonably assured the error did not influence the jury verdict or had but a slight effect. Johnson
v. State, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). Likewise, improper admission of evidence
is not reversible error if the same or similar evidence is admitted without objection at another
point in the trial. Dewberry v. State, 4 S.W.3d 735, 754 n.18 (Tex.Crim.App. 1999). In this
instance, other evidence came before the jury. Accordingly, the defects, if any, in the notice
statement, and the failure to conduct a hearing on the reliability of the statements were harmless. 
Issue No. Two is overruled.
            In Issue No. Three, Appellant argues that the trial court erred by allowing the jury to hear
testimony that Appellant had AIDS over his objection that the probative value of such testimony
was outweighed by its prejudicial effect. Specifically, Appellant contends that the testimony of
an investigating detective that a sexual assault exam was scheduled because Appellant had AIDS
was more prejudicial that probative. Appellant objected on that ground. Again, a party must
object each time inadmissible evidence is offered. Ethington v. State, 819 S.W.2d 854, 858
(Tex.Crim.App. 1991). Here, testimony to the effect that Appellant had AIDS came in without
objection from three different witnesses. Issue No. Three is overruled.
            In Issue No. Four, Appellant contends that the court erred in allowing inadmissible
hearsay into evidence. Specifically, Appellant complains that the complainant’s out-of-court
statements to witness Karen Shannon did not constitute prior consistent statements.
            The court’s ruling is reviewed under an abuse of discretion standard. Guzman v. State,
955 S.W.2d 85, 89 (Tex.Crim.App. 1997); Bolden v. State, 967 S.W.2d 895, 898 (Tex.App.--Fort
Worth 1998, pet. ref’d).
            During the testimony of Karen Shannon, the prosecutor asked the witness what the
complainant had told her. Appellant lodged a hearsay objection and the State responded that the
statement qualified as a prior consistent statement which rebutted the impression left with the
jury that the complainant’s testimony was influenced by her meeting with the prosecutor. The
court overruled the objection and Shannon testified that the complainant told her that she had
gone into the restroom at the church and Appellant came into the restroom and then ripped her
pantyhose. Appellant then put her finger in her mouth and touched complainant’s vaginal area.
            A prior statement by a witness is not hearsay if the declarant testifies at trial, is subject to
cross-examination about the statement, and the statement is consistent with the declarant’s
testimony and is offered to rebut an express or implied charge of recent fabrication or improper
influence or motive. Tex.R. Evid. 801(e)(1)(B).
            During the complainant’s testimony, Appellant cross-examined her with regard to her
feeling that people were counting on her to testify in a certain fashion. Also, it was implied
through cross-examination, that during her meetings with the prosecutor, it was implied that
people were counting on her to testify in a certain fashion.
            Appellant does not contest that this constitutes an express or implied charge of recent
fabrication or improper influence or motive; rather, Appellant claims that the statement made by
the complainant to Shannon does not qualify as a prior consistent statement because it is
inconsistent with the complainant’s testimony at trial because the complainant testified that
Appellant carried her into the restroom and the complainant never testified that her clothing was
torn or ripped by Appellant. However, while there may be discrepancies in the testimony, there
is still the consistent allegation of sexual abuse. See Wisdom v. State, 143 S.W.3d 276, 281
(Tex.App.--Waco 2004, no pet.). Issue No. Four is overruled.
            Having overruled each of Appellant’s issues on review, we affirm the judgment of the
trial court.
                                                                        DAVID WELLINGTON CHEW, Justice

September 14, 2006

Before Barajas, C.J., McClure, and Chew, JJ.
Barajas, C.J., not participating

(Do Not Publish)